JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CIV 6790

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ELIZABETH TAUB,                          )
individually and on behalf of            )
all others similarly situated,           )
                                         )
                      Plaintiff,         )        No.
                                         )
       · against ·                       )        CLASS ACTION
                                         )
HSBC BANK NEVADA, N.A.                    )        JURY DEMANDED
                                         )
                                         )
                      Defendant.         )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## COMPLAINT

1.     This action seeks redress for the illegal practices of Defendant HSBC
Bank Nevada, N.A. (the "Bank"), for providing to customers of its Saks store credit
card accounts ("Saks Store Card") disclosure statements that violated the Truth in
Lending Act ("TILA").

2.     As alleged in greater detail below, the Bank failed to furnish
disclosures in the full and timely manner mandated by the federal regulations
governing the opening of such credit card accounts. More specifically, the Bank
failed to properly apprise Saks Card customers of all rights and responsibilities of
the parties in the event of a billing error or dispute. TILA requires creditors to
furnish complete account-opening disclosures, including "billing rights" disclosures,
to a customer before the initial account transaction takes place, and the Bank failed
to do so.

1

3.     TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii) protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4.     Under the private enforcement provisions of TILA, plaintiff and the Class seek the recovery of statutory damages of up to $1,000,000 with respect to each of the Bank's failures to comply.

### Jurisdiction and Venue

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.

6.     Venue is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this District. Venue is also proper in this district because the Bank transacts business in this district and the interests of justice require maintenance of this action in this district.

### Parties

7.     Plaintiff Elizabeth Taub ("Taub") resides in New York, New York, which is within this district.

2

8.     Taub is a "consumer," as that term is defined by § 1602(h) of TILA,
because this complaint arises from the Bank's offer and extension of credit to Taub,
a credit card holder, for personal, family or household purposes.

9.     Upon information and belief, the Bank is a corporation doing business
in the State of Nevada and throughout the United States, with a principal place of
business in Las Vegas, Nevada.

10.     The Bank is a "creditor," as that term is defined by § 1602(f) of TILA
and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226.2(a)(17),
because at all relevant times, the Bank, in the ordinary course of its business,
regularly – *i.e.*, more than 25 times a year – extended or offered to extend
consumer credit for which a finance charge is or may be imposed, which is payable
in more than four installments.

### *Factual Allegations*

11.     Taub is the holder of a Saks Store Card, a private-label credit card
account issued by the Bank generally intended for the purchase of goods or services
at Saks retail locations or on the Saks website.

12.     Taub received disclosure documents from the Bank when she applied
for and opened her Saks Store Card account on or about September 14, 2011, the
relevant portion of which is attached as Exhibit A.

13.     All class members herein, as defined below, hold or held a Saks Store
Card originally or presently issued by the Bank.

*Class Allegations*

14.     Taub brings this action individually and on behalf of all persons similarly situated.

15.     The proposed class consists of all persons who, according to the Bank's records, upon applying for and opening a Saks Store Card account and making the initial purchase charged to that account within one year before the filing of this action, were furnished billing rights disclosures with verbiage substantially similar to those contained in <u>Exhibit A</u>, which does not conform to the requirements of Regulation Z and TILA.

16.     Specifically excluded from this class are the Bank, any entity in which the Bank has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

17.     The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank every year, the number of class members is believed to be in excess of 1,000 persons.

18.     Taub's claims are typical of, if not identical to, all members of the class and Taub does not have any interest that is adverse or antagonistic to the interests of the class. If the conduct of the Bank violates TILA as applied to Taub, then it violates TILA with respect to the entire class.

19.    Taub will fairly and adequately protect the interests of the class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

20.    The class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

21.    The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the class do not have a particular interest in individually controlling the prosecution of separate actions.

22.    There are questions of law and fact which are common to the members of the class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank has a standardized procedure by which it fails to disclose a credit customer's billing rights as required by TILA and Regulation Z.

23.    Upon information and belief, the Class consists of thousands of customers.

5

24.     Thus, a class action is an appropriate and superior method for the fair

and efficient adjudication of the present controversy given the following factors:

      a) Common questions of law and/or fact predominate over any individual
         questions which may arise and, accordingly, there would accrue
         enormous savings to both the Court and the Class in litigating the
         common issues on a class-wide instead of a repetitive individual basis;
         and

      b) The aggregate volume of the individual class members' claims, coupled
         with the economies of scale inherent in litigating similar claims on a
         common basis, will enable this case to be litigated as a class action on a
         cost-effective basis, especially when compared with repetitive
         individual litigation.

25.     Class certification is also fair and efficient because prosecution of

separate actions by individual Class members would create a risk of differing

adjudications with respect to such individual members of the Class, which as a

practical matter may be dispositive of the interests of other members not parties to

the adjudication, or substantially impede their ability to protect their interests.

Moreover, since the actual monetary damages suffered by, or statutory damages

available to, individual Class members may be relatively small, although significant

in the aggregate, the expenses and burdens of individual litigation make it

impossible or effectively impossible for the members of the Class to seek individual

redress for the TILA violations committed by Defendant.

26.     Plaintiff anticipates that there will be no difficulty in the management

of this litigation. The records of the individuals encompassed within the Class are in

Defendant's possession.

COUNT I

Violations of the Truth in Lending Act

27.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

28.    Congress authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA. 15 U.S.C. § 1604(a).

29.    The set of regulations that the FRB has promulgated to implement TILA is known as Regulation Z. 12 C.F.R. §226.1 *et seq.*

30.    TILA requires a creditor to disclose to a customer who is opening a new account, before the first transaction on the account is made, certain rights and responsibilities applicable to each party with respect to billing disputes "in a form prescribed by regulations of the Board." 15 U.S.C. § 1637(a)(7).

31.    Accordingly, the Board prescribed that creditors furnish each customer who is opening a new account a statement of billing rights "substantially similar" to that which appears in Model Form G-3(A) of Appendix G to Regulation Z ("Model Billing Rights Form"). 12 C.F.R. §226.6(b)(5)(ii).

32.    The notice of billing rights (the "Bank Notice") Defendant furnished Taub, as seen in Exhibit A, is not substantially similar to the Model Billing Rights Form in language or substance. 12 C.F.R. § 226 Appendix G, Model Form G-3(A). reproduced as Exhibit B.

7

33.     The Bank Notice omitted a warning to consumers who would initiate billing-error correspondence to contact the creditor "[a]t least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong." 12 C.F.R. 226 Appendix G, Model Form G-3(A).

34.     The Bank Notice also omitted the creditor's responsibility, within 30 days of receiving a consumer's billing-error correspondence, to inform the consumer that it indeed received such correspondence, irrespective of whether the purported error had or had not already been corrected by then.

35.     The Bank Notice also omitted the preconditions governing the consumer's limited right not to pay for a purchase of goods or services when she is dissatisfied with that purchase; more specifically, it failed to disclose that in order for the consumer to exercise this right, the credit card itself must have been used for the purchase and the purchase must not have already been fully paid for.

36.     The Bank Notice also omitted the consumer's responsibility to contact the creditor in writing (or electronically) when she is dissatisfied with a purchase of goods or services in order to exercise that right not to pay the remaining amount due on the purchase.

37.     The Bank Notice also used language throughout that was dissimilar to that which is contained in the Model Billing Rights Forms. 12 C.F.R. 226 Appendix G, Model Form G-3(A).

8

38.     With respect to each of the Bank's violations of TILA, as alleged above, Plaintiff and the Class are entitled to recover up to $1,000,000 in statutory damages, together with costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2).

**WHEREFORE**, Plaintiff Elizabeth Taub prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1)     An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2)     A declaration that the Bank's systematic and standard policy of furnishing Saks Store Card account-opening disclosures that insufficiently disclose the billing rights of credit customers and the responsibilities of the Bank as credit issuer violates the Truth in Lending Act;

(3)     An injunction permanently prohibiting the Bank from engaging in the conduct described;

(4)     Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(5)     Attorney fees, litigation expenses, and costs; and

(6)     Such other and further relief as to this Court may seem just and proper.

*Jury Demand*

Plaintiff respectfully requests a trial by jury.

Dated:  New York, New York
       September 7, 2012

Respectfully Submitted,

By: _____

Brian L. Bromberg
One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 678-6546

# Exhibit A

## IMPORTANT INFORMATION

**PROCEDURES FOR OPENING YOUR NEW CREDIT CARD ACCOUNT**
The USA Patriot Act and the implementation of federal regulations require all financial institutions to obtain, verify and record information that identifies each person who opens a credit card account.
**What this means for you:**
When you ask us to open a credit card account for you, we must ask for your name, address, date of birth, social security number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. We apologize for any inconvenience and thank you for your cooperation.

Truth in Lending Disclosure Chart For Saks Fifth Avenue Card

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **23.99%**<br>This APR will vary with the market based on the Prime Rate. |
| Penalty APR and When it Applies | **26.99%**<br>This APR will vary with the market based on the Prime Rate.<br><br>This APR may be applied to your account if you make a late payment.<br><br>**How Long Will the Penalty APR Apply?:** If your APRs are increased for this reason, the Penalty APR will apply until you make the next six consecutive minimum payments when due. |
| How to Avoid Paying Interest on Purchases | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $1.00. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard |

| Fees | |
|---|---|
| Annual Fee | None |
| **Penalty Fees** | |
| • Late Payment | Up to $35 |
| • Over The Credit Limit | None |
| • Returned Payment | Up to $25 |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)". See your Cardholder Agreement for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your Cardholder Agreement.

**The above variable APRs were in effect within the last 90 days. If these APRs have changed due to changes in the Prime Rate, you will be provided with a Rate Insert that includes variable APRs that were in effect within the last 30 days.**

310-265 PL (1-11)

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stats., or a Statutory Terminable Individual Property Classification Agreement under 766.590 adversely) affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. If you are married, by submitting your credit card application and confirming that this credit card obligation is being incurred in the interest of your marriage and your family if the credit card for which you are applying is granted, you are notifying the Bank that you have a spouse who needs to receive notification that credit has been extended to you.

**NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If you are married, you may apply for credit in your own name.

**NOTICE FOR FLORIDA RESIDENTS:** You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.

**NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency, if a report was obtained.

**NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department 1-800-522-3330.

**NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

## IMPORTANT TERMS OF YOUR SAKS FIFTH AVENUE CREDIT CARD ACCOUNT

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant applies for an Account with HSBC Bank Nevada, N.A., a national banking association, and requests one or more credit card(s) bearing the name or trademark of Saks Fifth Avenue to be used in connection with the Account. The word "Card" means any credit cards issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant named on the credit card application and the words "we", "us" and "our" refer to HSBC Bank Nevada, N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144.

If your application is approved, "applicant" will be referred to as "primary cardholder" for purposes of this agreement.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. INTEREST CHARGES:** (a) Interest Charges are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Interest Charge for the billing cycle is the sum of the Interest Charge for each Credit Plan, subject to the minimum Interest Charge under Section 3.

(b) Interest Charges are imposed on purchases from the transaction date until paid in full, except that no Interest Charge is imposed in a billing cycle on:

(i) a new purchase on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(ii) any balance on a Regular, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the cycle;

(iii) a purchase on a Waived Interest Charge Credit Plan for the specified promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotion expiration date.

(c) If an Interest Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan, the amount will be determined by multiplying the applicable Daily Periodic Rate times the Daily Balance for the Credit Plan for each day in the cycle, and adding the results of those calculations together.

(d) If an Interest Charge is imposed on a Same As Cash Credit Plan during a cycle, the amount will be the sum of the following daily Interest Charge calculations for the Credit Plan during the current cycle and during each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase through the current cycle: (i) the applicable Daily Periodic Rate for the Current Cycle

times the Daily Balance for each day in the current cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

(e) The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, and adding (i) any new purchases made on the Credit Plan that day, (ii) the previous day's Interest Charges, (iii) any credit insurance premiums or debt cancellation fees (if applicable) incurred on that day and (iv) any late fees, over the credit limit fees, returned payment fees or other fees incurred on that day and subtracting any payments or credits applied to the Credit Plan that day. If your Account is subject to a grace period during the billing cycle, payments made during that cycle will be subtracted from any Daily Balances in the current cycle. For any Same As Cash Credit Plan, credit insurance premiums or debt cancellation fees (if applicable) are not included in the Daily Balance until after the promotional period. If a transaction for a returned payment or a dispute resolved in our favor posts after the beginning of the billing cycle, the applicable Daily Balance(s) and any related Interest Charge calculations will be adjusted retroactively to include the transaction amount as of the date of the original transaction.

(f) The Daily Periodic Rate which is used to determine your Interest Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the U.S. prime rate published in the Money Rates table of The Wall Street Journal that is in effect on the last day of the month ("Prime Rate") plus a "Spread" of 20.74 percentage points for the Standard Rate and a "Spread" of 23.74 percentage points for the Penalty Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month.

For example, as of the billing cycle beginning January 1, 2011, the Interest Charge for the Standard Rate would have been a Daily Periodic Rate of .06573% (corresponding 23.99% Annual Percentage Rate) and the Interest Charge for the Penalty Rate would have been a Daily Periodic Rate of .07396% (corresponding 26.99% Annual Percentage Rate). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Interest Charge and the Minimum Payment due on your Account. Your APR may increase to the Penalty APR if we fail to receive your minimum payment with in 60 days when due. You will no longer be eligible for the Standard Rate and all existing Promotional Credit Plans will terminate, and your entire Account balance will be subject to the Penalty Rate. If your Account becomes subject to the Penalty APR, we will provide advance notice before the new Penalty APR goes into effect. If you make the next six consecutive on time minimum payments starting with your first payment due once the Penalty APR goes into effect, your rates will return to the non-penalty APR(s) applicable to your Account. If you do not make these six consecutive on time minimum payments, we may keep the Penalty APR on your Account indefinitely.

**3. MINIMUM INTEREST CHARGE:** A minimum Interest Charge of $1.00 will be assessed for each billing cycle in which a Interest Charge is payable.

**4. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee:** A Late Payment Fee may be assessed for each billing cycle in which at least the Minimum Payment Due, including any amount past due, is not paid in time to be credited to the Account by the Payment Due Date.

The amount of the Late Payment Fee is shown in the chart below. In no event will your Late Payment Fee exceed the amount of your Minimum Payment Due.

| Outstanding Balance on Payment Due Date | Late Payment Fee – first time your payment is late | Late Payment Fee – if another payment is late during the next 6 billing cycles |
|---|---|---|
| Up to and including $100 | $19 | $19 |
| More than $100 and up to and including $300 | $25 | $29 |
| More than $300 | $25 | $35 |

b) **Returned Payment Fee:** A Returned Payment Fee may be assessed to the Account each time a payment check, automatic payment deduction, or other payment method is not honored or is returned unsatisfied by your bank or other financial institution. Any payment returned unsatisfied for any reason may be repeated to any type of transaction (i.e. purchases, etc.) and Interest Charges may be reinstated back to the payment date at the APR being charged for that transaction.

Your Returned Payment Fee is $25.

In no event will your Returned Payment Fee exceed the Minimum Payment Due.

c) **Research Fees:** A Research Fee may be assessed to the Account for each copy of a requested document. The amount of this fee will be disclosed at the time such copies are requested.

d) **Reissued Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Payment by phone fee:** A Payment by Phone Fee may be assessed to the Account each time a payment is made by telephone, even if the payment is made by someone other than you. The amount of this fee will be disclosed at the time such payment is requested.

f) **Over the Credit Limit Fee:** In the event you exceed your credit limit, you will be charged an Over the Credit Limit Fee of $0.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorney's fees, when and as permitted by applicable law.

**5. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your card and in all insurance contracts and all proceeds, returned premiums, mechanical failure and extended service contract, and refunds of cancellation of any mechanical failure and extended service contracts financed therewith. Each good purchased on your Account will secure the entire Account balance until such good is paid in full. For purposes of determining which goods are subject to a security interest, pay-

ments received will be deemed to be applied first to any unpaid insurance premiums (if applicable), Interest Charges and fees and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland. If we repossess any goods purchased with your card, we may charge you our repossession cost including, but not limited to, necessary repairs, storage fees and costs of sale, when and as permitted by law.

## 6. ARBITRATION:

### Federal Arbitration Act

This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law upon written request as set forth in the applicable arbitration association procedures. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. Judgment upon the award may be entered in any court having jurisdiction.

### Claims and Arbitration Administrators

This arbitration provision shall apply to any Claim (defined below) by or against us, or you or any other Covered Person (defined below). You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether preexisting, present or future), including initial claims, counterclaims, cross-claims and third party claims, arising from or relating to (a) this Agreement, the application, your Account, any transaction or activity involving any payment or failure to make payment on your Account, or any solicitation, advertisement, promotion, or oral or written statements related to this Agreement or your Account, (b) the relationships which result from this Agreement and your relationship with any Covered Person pursuant to the section B in the immediately preceding subsection or (c) the scope, validity or enforceability of this arbitration clause, any part thereof or the entire Agreement (any of the foregoing a "Claim"), shall be resolved, upon the election of you, us, or any other Covered Person described below, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator (the "Administrator") selected at the time the Claim is filed or received by a party to the Claim. The party initiating the arbitration proceeding shall have the right to select one of the following Administrators: Judicial Arbitration & Mediation Services, Inc. ("JAMS") or the American Arbitration Association ("AAA"). The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The rules and forms of JAMS and AAA may be obtained by writing to those organizations at the addresses listed under Further Information below. Our address for service of process under this provision is HSBC Bank Nevada, N.A., P.O. Box 98740, Las Vegas, NV 89193-8740.

### Small Claims Exemption

We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. However, if that Claim is transferred or appealed to a different court, we reserve our right to elect arbitration at such time.

### Location of Arbitration and Fees

Any participatory arbitration hearing that you attend will take place in a location that is reasonably convenient to you. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the Administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the Administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the Administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the Administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the Administrator or for which we are responsible.

### Covered Persons

This arbitration provision covers Claims by or against (a) us, any corporate parent, subsidiary, or affiliate, any predecessor or successor of the foregoing, and any officer, director, employee, agent or representative of any of the aforementioned, (b) you and any authorized user, and any other person claiming through you or any authorized user, and (c) any other person assisting us in offering Cards, administering Accounts or providing Card related benefits or services ("Covered Persons"). If a Claim that is within the scope of the first paragraph of the "Claims and Arbitration Administrators" paragraph above is advanced by or against any third person, and any of the persons mentioned in the previous sentence is involved as a party, then the entire Claim is subject to arbitration under this Agreement, including any Claim by or against any third person.

### Protection of Information

The rules and procedures of the Administrator, which you may obtain from that organization, shall govern the arbitration unless they conflict with this arbitration provision, in which case this arbitration provision will control. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, nor to state or local laws that relate to arbitration proceedings. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through use of protective orders).

### Parties to Arbitration

Arbitration shall be conducted in the name of individually named parties. Unless all parties consent, neither you nor we may join, consolidate, or otherwise bring claims regarding two or more accounts, individuals, or account holders in the same arbitration, other than Covered Persons, joint applicants or authorized users of an account. There shall be no class actions, private attorney general actions, or other representative or col-

lective actions, in an arbitration, even if the underlying dispute has been asserted in a court as a class action, private attorney general action, or other representative or collective action. No party may advance a Claim in arbitration on behalf of or against a person in a representative or collective capacity, or on behalf of or against a person who is not an individually named party to the arbitration; nor may a party seek an award or benefit in arbitration on behalf of or against a person who is not an individually named party. The arbitrator shall not have authority to resolve any claim advanced by or on behalf of anyone who is not an individually named party, and shall not have the authority to make an award for the benefit of, or against, anyone who is not an individually named party. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the express written consent of you and us. These limitations are hereafter referred to as the "Class Action Waiver."

The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this arbitration provision. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. You and we acknowledge and agree that under no circumstances will a class action be arbitrated.

### Decision and Appeal

The arbitrator shall resolve all Claims, including the applicability of this arbitration provision or the validity of the entire Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court. The arbitrator's decision will be final and binding unless you or we seek an appeal of the award by making a written request to the Administrator within the timeframe specified in the Administrator's rules. In the event of such an appeal, an appeal panel consisting of three arbitrators will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as provided under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

### Consequences of Electing Arbitration

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

### Further Information

You may contact, obtain the arbitration rules of, or file a Claim with JAMS or AAA as follows:

Judicial Arbitration & Mediation Services, Inc.
520 Eighth Ave., 34th Floor
New York, NY 10018
www.jamsadr.com

American Arbitration Association
1633 Broadway, Floor 10
New York, NY 10019
www.adr.org

### Miscellaneous

This arbitration provision shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. In the event of a conflict or inconsistency between the rules and procedures of the Administrator and this arbitration provision, this arbitration provision shall govern.

### Opt Out of Arbitration

You may reject this arbitration provision without penalty. To do so, you must send HSBC, c/o HSBC Bank Nevada, N.A., P.O Box 98740, Las Vegas, NV 89193-8740 a signed writing ("Rejection Notice") that is received within thirty (30) days after the date you receive this arbitration provision. The Rejection Notice must identify the transaction involved and must include your name, address, and social security number and must be signed by all persons contractually obligated on your account. You may send the Rejection Notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to reject the arbitration provision. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf.

## 7. MONITORING PRACTICES: 
You agree that our supervisory personnel may listen to and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardholders.

The information about the costs of the Card described in this application and Important Terms of Your Credit Card Account is accurate as of January, 2011. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including interest charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any interest charges related to any questioned amount. If we didn't make a mistake, you may have to pay interest charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

---

**SAKSFIRST GUIDELINES AND RESTRICTIONS**
Pending credit approval. 10% discount is one time only. Excludes some designer collections, some leased departments, some cosmetics, all service fees, restaurants, gratuities and Gift Card purchases. Cannot be combined with any other offer. No adjustments to prior purchases. Valid only for first-time Saks Fifth Avenue credit card applicants.

**Saks Fifth Avenue Store Card Cardmembers**
To qualify for SAKSFIRST and receive SAKSFIRST points, you must spend a minimum of $1000 in eligible net purchases (purchases net of returns and other adjustments) on your Saks Fifth Avenue credit card during a calendar year period, January 1 through December 31.

Rev. 09/10

FACTS

## WHAT DOES HSBC DO WITH YOUR PERSONAL INFORMATION?

Customer To Retain This Portion – Read Carefully

Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

The types of personal information we collect and share depend on the product or service you have with us. This information can include:
- Social Security number and income
- Account balances and Medical information
- Credit history and credit scores

When you are *no longer* our customer, we continue to share your information as described in this notice.

All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons HSBC chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does HSBC share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

- Call 1-866-673-3242 (outside the U.S. and Canada call 1-601-592-5431 collect) — our menu will prompt you through your choice(s)

**Please note:**
If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.

However, you can contact us at any time to limit our sharing.

Call 1-866-673-3242 (outside the U.S. and Canada call 1-601-592-5431 collect)

Issued by  HSBC ⟨X⟩

Page 2

| Who is providing this notice? | This notice is being provi… |
|---|---|
| **How does HSBC protect my personal information?** | To protect your persona… security measures that c… safeguards and secured … Also, we only allow em… required or permitted by … |
| **How does HSBC collect my personal information?** | We collect your personal …<br>- open an account or gi…<br>- pay your bills or apply…<br>- use your credit or deb…<br>We also collect your p… affiliates, or other compa… |
| **Why can't I limit all sharing?** | Federal law gives you the …<br>- sharing for affiliates' eve…<br>- affiliates from using yo…<br>- sharing for nonaffiliate…<br>State laws and individual … below for more on your ri… |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to … |

| Affiliates | Companies related by common ownership…<br>- *Our affiliates include companies with a… Beneficial and HFC.* |
|---|---|
| Nonaffiliates | Companies not related by common owners…<br>- *Nonaffiliates we share with can inclu… insurance agents or a re-insurer), or n… and service providers.* |
| Joint marketing | A formal agreement between nonaffiliated… services to you.<br>- *Our joint marketing partners include … service providers.* |

HSBC companies and affiliates with access to your perso… where you reside, including but not limited to the United …
**Special notice for residents of California**
HSBC does not share your information with nonaffiliates, …
**Special notice for residents of Vermont**
HSBC does not share your information with affiliates, oth… and our experiences with you, except as permitted or rec… information with nonaffiliates, except as permitted or requ…

Rev. 09/10

**Page 2**

...ives consumers
...collect, share,
...t what we do.

...rvice you have

...ed in this notice.

...their everyday
...their customers'
...mit this sharing.

No

No

No

No

Yes

Yes

Yes

...601-592-5431

...0 days from the
...continue to share

...5431 collect)

| | |
|---|---|
| **Who is providing this notice?** | This notice is being provided by HSBC Bank Nevada, N.A. |
| **How does HSBC protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>Also, we only allow employees, authorized service providers and other parties as required or permitted by law to access your information. |
| **How does HSBC collect my personal information?** | We collect your personal information, for example, when you<br>■ open an account or give us your contact information<br>■ pay your bills or apply for a loan<br>■ use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes—information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Our affiliates include companies with an HSBC name and financial companies such as Household, Beneficial and HFC.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Nonaffiliates we share with can include financial services providers (such as mortgage bankers, insurance agents or a re-insurer), or non-financial companies such as retailers, marketing companies and service providers.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include companies such as insurance, financial and non-financial service providers.* |

HSBC companies and affiliates with access to your personal information may be located in countries other than where you reside, including but not limited to the United Kingdom and India.

**Special notice for residents of California**
HSBC does not share your information with nonaffiliates, except as permitted or required by applicable law.

**Special notice for residents of Vermont**
HSBC does not share your information with affiliates, other than information relating to your account transactions and our experiences with you, except as permitted or required by applicable law. Also, HSBC does not share your information with nonaffiliates, except as permitted or required by applicable law.

# Exhibit B

G–3(A)—Long-Form Billing-Error Rights Model Form (Plans Other Than Home-Equity Plans)

*Your Billing Rights: Keep This Document For Future Use*

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

*What To Do If You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

[Creditor Name]

[Creditor Address]

[You may also contact us on the Web: [Creditor Web or email address]]

In your letter, give us the following information:

• *Account information:* Your name and account number.

• *Dollar amount:* The dollar amount of the suspected error.

• *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

• Within 60 days after the error appeared on your statement.

• At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing* [or electronically]. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

*What Will Happen After We Receive Your Letter*

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

• We cannot try to collect the amount in question, or report you as delinquent on that amount.

• The charge in question may remain on your statement, and we may continue to charge you interest on that amount.

• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

• We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

• *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.

• *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

*Your Rights If You Are Dissatisfied With Your Credit Card Purchases*

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* [or electronically] at:

[Creditor Name]

[Creditor Address]

[[Creditor Web or e-mail address]]

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.